UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

                                                                                   Case No. 8-19-70078-reg

BARRY MINES,

                                                                                   Chapter 7

                              Debtor.
-------------------------------------------------------------------x
ROBERT MINER and LAURIE MINER,

                              Plaintiffs,                  Adv. Proc. No. 8-19-08019-reg

v.

BARRY MINES,

                              Defendant.
-------------------------------------------------------------------x

## **DECISION**

      Before the Court is an adversary proceeding commenced by Robert and Laurie Miner (the "Plaintiffs") against the debtor, Barry Mines (the "Debtor" or "Defendant"), seeking to except from the Debtor's discharge a claim ("Claim") in the amount of $173,748. The Claim is based on a prepetition arbitration award (the "Award"), subsequently confirmed and reduced to judgment by the Supreme Court of Suffolk County, NY ("Judgment"),[1] which found the Debtor violated unspecified provisions of the Virginia Consumer Protection Act (the "VCPA"). The Plaintiffs argue that this Court must not only give full faith and credit to the arbitrator's determination of liability, but the Court is also bound to find that the determination of liability in

---

[1]      For purposes of this Decision, the Court will refer only to the Award, recognizing that once the Award was confirmed by the state court and reduced to judgment, it should be treated as if it had been rendered by the state court. *See Citigroup v. Abu Dhabi Invest. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015) (stating arbitration award, which "ordinarily is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.' *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted). . .").

the arbitration proceeding is sufficient, when applying the principles of collateral estoppel, to require this Court to find that all the requisite elements of section 523(a)(2)(A) have been established. The Debtor argues that the elements of section 523(a)(2)(A) were not established by the Award and therefore collateral estoppel on the issue of non-dischargeability should not apply.

Application of collateral estoppel to a prepetition judgment in a section 523 proceeding implicates potentially two distinct analyses. First, if the prepetition judgment contained express findings of fact and conclusions of law, the bankruptcy court must consider whether those findings and conclusions, considered in the aggregate, establish the elements of section 523 by a preponderance of the evidence. Second, if the prepetition judgment did not contain express findings and conclusions, the bankruptcy court must look behind the judgment at the claims asserted, the arguments made and the elements of the prepetition claim and attempt to reconstruct the reasoning and uncover the foundational elements of the prior ruling. *See CB Research & Dev., Inc. v. Kates (In re Kates)*, 485 B.R. 86 (Bankr. E.D. Pa. 2012). Under this analysis, collateral estoppel will only apply if the foundational elements of the prior ruling align precisely with section 523.

In this case, apart from granting actual and treble damages pursuant to unspecified provisions of the VCPA, the Award contains no factual findings or legal conclusions made with any specificity. Nor does the underlying record provide a basis for this Court to conclude that the necessary elements of section 523(a)(2)(A) were established. Therefore, the Award, while given preclusive effect with respect to the Debtor's liability to the Plaintiffs under the VCPA, does not require this Court to conclude the Debtor's conduct satisfies the elements of section 523(a)(2)(A).

Barring a finding for the Plaintiffs based on collateral estoppel principles, Plaintiffs must present sufficient independent evidence to establish the elements of section 523(a)(2)(A) and the Debtor is free to present defenses. For the reasons that follow, the Court finds that the Plaintiffs have failed to meet their burden.

## FACTS

The Debtor owns and operates, Boating Times Long Island, Boating Times Holdings, LLC ("BTH") and Promotion Marketing Management, LLC, through which he advertises opportunities for individuals to create and operate their own boating magazines. The Plaintiffs engaged in discussions with the Debtor about investing in and creating a boating magazine for the Chesapeake Bay area of Virginia. On or about October 29, 2014, the Plaintiffs entered into an Operating Agreement (the "Agreement") with the Debtor and his companies.

On or about March 27, 2017, the Plaintiffs, acting *pro se*, sent the Debtor a Notice of Demand for Arbitration (the "Notice of Demand"). The Notice of Demand states that it is Plaintiffs' intention to assert claims against the Debtor which include but are not limited to: (1) "[m]ultiple instances of violation of the Operating Agreement," (2) "[d]eception, fraud, fraud in the inducement, false pretense, and misrepresentation," and (3) "[p]unitive damages in the form of treble damages, attorneys' fees, and costs, as justified by Respondents' willful conduct." ECF No. 26, Exhibit 2. Despite the reference to fraud, false pretenses and misrepresentation in the first paragraph, the remaining seven pages of the Notice of Demand do not contain allegations of fraud. Rather, they allege multiple violations of the Operating Agreement by: violating "exclusive region" and non-compete clauses of the Operating Agreement; failing to provide the "Hungry Boater" app; and infringing on Plaintiffs' editorial rights. The only reference to the VCPA in the Notice of Demand was contained in the conclusion, where the Plaintiffs state that

the Debtor's "willful and deliberate violations warrant an award of treble damages, attorney fees, and costs. Va. Code Ann. §59.1-204 (2016)."

The Debtor filed a Written Response to Complaint (the "Debtor's Rebuttal") rebutting each of the assertions of the Notice of Demand and asserting counterclaims against Plaintiffs. On or about August 18, 2017, the Plaintiffs filed a reply to the Debtor's Rebuttal and counterclaims.

On or about February 26, 2018, the Plaintiffs submitted their Pre-Hearing Brief for the arbitration. The Introduction section states:

> This action is submitted pursuant to Virginia Limited Liability Company Act, Va. Code Ann. § 13.1 et seq. (2016), Virginia Consumer Protection Act, Va. Code Ann. § 59.1-198 (2016), Va. Code Ann. § 59.1-200 et seq. (2016), Va. Code Ann. § 59.1-204 (2016), and any other relevant authorities as deemed appropriate by the Arbitrator.

The remainder of the Pre-Hearing Brief makes no reference to any particular subsection of any of these statutes, except for the claim for treble damages under VCPA § 59.1-204. The Plaintiffs asserted four claims sounding in breach of contract and one claim for "fraud and deception" under the §18.2-216 of the Virginia Code resulting from Debtor's alleged violation of the Virginia Retail Franchising Act, Va. Ann. Code §13.1-559,[2] based on the Debtor's representation that their business was a partnership when in fact it was a franchise, and the Debtor's failure to provide a disclosure statement as mandated by the Virginia Code. The Plaintiffs also asserted that the Debtor attempted to commit fraud during the course of the arbitration by asserting counterclaims demanding payments for work done on a magazine issue that was never printed.

---

[2]     The Plaintiffs were not seeking relief under the Retail Franchising Act. Rather, they were using Debtor's alleged violations of the Act as proof of his "fraud and deception."

On or about February 28, 2018, the Debtor, along with BTH, Boating Times Long Island, and Promotion Marketing Management, submitted their Pre-Hearing Brief. At the arbitration, which was held in March 2018, the Plaintiffs appeared *pro se* and the Debtor appeared with counsel. The arbitrator found for the Plaintiffs. The Award stated the following:

> An award is granted against Respondents Barry Mines, Boating Times Long Island, Boating Times Holdings, LLC, and Promotion Marketing Management, LLC, jointly and severally, in the amount of $156,417.12, consisting of $45,736 in actual damages ($137,208 after trebling, pursuant to Code of Virginia section 59.1-204) and $19,209.12 in prejudgment interest from November 19, 2015 at the statutory rate of 6% per annum.

ECF No. 26, Exhibit 2.

On or about December 19, 2018, a judgment was entered by the Suffolk County Supreme Court in the sum of $162,448.37 (the "Judgment"), confirming the Award and adding costs and interest. To the Court's knowledge the Judgment is final and non-appealable.

On January 4, 2019, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. On February 13, 2019, Robert Miner filed a claim based on the Judgment in the amount of $173,748, including interest and costs from the date of the Award to the bankruptcy filing.

## PROCEDURAL HISTORY

On January 25, 2019, the Plaintiffs commenced this adversary proceeding under section 523(a)(2)(A) alleging that the Award is entitled to collateral estoppel effect on the issue of non-dischargeability because "[t]he Arbitrator granted treble damages and such an award requires a finding of deception, fraud, use of false pretenses, false promises and/or misrepresentation, and/or a willful violation of Virginia Consumer Protection Act." Complaint, ECF No. 1, ¶14. The Debtor filed a timely answer which generally denied the claims and asserted affirmative

defenses that the complaint failed to state a cause of action upon which relief could be granted and failed to plead the elements of fraud with particularity. Answer to Complaint, ECF No. 8.

On April 22, 2019, the Plaintiffs moved for summary judgment re-asserting the collateral estoppel argument set forth in the complaint. Mot. for Summ. Jmt., ECF No. 14. On May 3, 2019, the Debtor filed a Motion to Dismiss the adversary proceeding, and opposition to the Plaintiffs' summary judgment motion. Mot. to Dismiss, ECF No. 15. The Debtor asserted that the arbitrator did not make any determination that the Debtor committed fraud, as fraud was neither sufficiently alleged in the arbitration nor specifically found in the Award. *Id*. Both parties filed supplemental briefs.

By Order, dated June 7, 2019, the Court denied both the Plaintiffs' motion for summary judgment and the Debtor's motion to dismiss, and directed that this matter proceed to trial. A pretrial order was entered setting discovery and motion deadlines, and the final pretrial conference was held on December 18, 2019. A trial was scheduled for April 28, 2020, which was delayed due to the intervening COVID-19 pandemic.

On March 11, 2021, the parties agreed to submit this matter for adjudication on the papers and on March 29, 2021, they filed a Joint Pre-Trial Memorandum. ECF No. 26. In addition to the Operating Agreement and deposition transcript of the Debtor, the Plaintiffs seek to admit into evidence exhibits related to the arbitration consisting of (i) the Award, (ii) the Notice of Demand, (iii) the Debtor's Rebuttal, (iv) the Plaintiffs' reply to the Debtor's Rebuttal, (v) the Plaintiffs' Pre-Hearing Brief, (vi) the Debtor's Pre-Hearing Brief, and (vii) the Judgment.

The Debtor objects to the introduction of any exhibits that relate to the arbitration on the basis that the Court already determined that the Award was not entitled to collateral estoppel effect when it denied Plaintiffs' motion for summary judgment. ECF No. 26, ¶7. Barring

collateral estoppel effect, Debtor argues, the arbitration pleadings, Award and Judgment are inadmissible hearsay. *Id*.  In his defense, the Debtor seeks to introduce documentary evidence consisting of emails between himself and various web developers to support his claim that he made good faith efforts to comply under the Agreement.

On April 2, 2021, the Plaintiffs responded to the Debtor's evidentiary objection arguing that the exhibits relating to the arbitration are admissible because, first, the order denying summary judgment did not contain any ruling on the collateral estoppel effect of the Award. Pls.' Resp. to Df.'s Objections to Admissibility of Trial Exhibits, ECF No. 28. And second, arbitration awards and any filings from the arbitration are admissible under Federal Rule of Evidence 803(6) as business records and documents from a regularly conducted activity. *Id*. Alternatively, the Plaintiffs argue that even if the content of the documents are inadmissible, the documents are admissible for the limited purpose of proving that the arbitration was fully litigated and was litigated on the issue of fraud. *Id.*

## DISCUSSION

### 1. Admissibility of the arbitration documents

Hearsay is defined as a statement not made by the declarant while testifying at trial or a hearing which is offered into evidence to prove the truth of the matter asserted. FED. R. EVID. ("F.R.E.") 801(c). As a general rule, hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or the Supreme Court provides otherwise. F.R.E. 802.

The arbitration documents in this case initially are being offered not to prove the truth of the matters asserted, but for the non-hearsay purpose of proving that the arbitration proceeding and resulting Award implicate factual findings or legal conclusions that are identical to the section 523(a)(2)(A) claims asserted here. *See* collateral estoppel discussion *infra,* part 3. So, for purposes of this Court's collateral estoppel analysis, the arbitration documents will be allowed in

evidence. *See Howard et al. v. Eckerd (In re Eckerd)*, Case No. 18-41521, Adv. Proc. No. 18-4092, 2019 WL 5250774, at *5 & n.43 (Bankr. E.D. Tex. Oct. 16, 2019) (citing *Callan v. New York Cmty. Bank*, 643 F. App'x 666, 667 (9th Cir. 2016); *United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013)); *United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011) ("A prior judgment is . . . 'not hearsay, [] to the extent that it is offered as a legally operative verbal conduct that determined the right and duties of the parties.") (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004)).

If the Court decides, as it does, that collateral estoppel does not apply, the question then becomes whether the Court can admit the underlying arbitration documents as evidence to prove the elements of Plaintiffs' section 523(a)(2)(A) claim. The Court agrees with the Debtor that the underlying arbitration pleadings, insofar as they are offered for the truth of the matters asserted, qualify as hearsay under F.R.E. 801(c). Nonetheless, the Court will admit the Debtor's arbitration pleadings under the "opposing party" exception of F.R.E. 801(d)(2)(A), and the Plaintiffs' arbitration pleadings will be admitted under the "residual" exception of F.R.E. 807.[3] The Plaintiffs' arbitration pleadings were made under the penalty of perjury, are relevant to the issue before the Court, and, given the parties' agreement to submit this matter for adjudication on the papers and forgo witness testimony, are the most probative evidence addressing the facts.

---

[3] "Whether to admit evidence under the residual hearsay exceptions is committed to the discretion of the trial court." *In re Lawrence*, No. 97-11258, 2008 WL 2095863, at *3 (Bankr. N.D.N.Y. May 16, 2008) (internal citations omitted). In the Second Circuit, courts consider the following five factors in determining whether the exception applies: (i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advance the interests of justice[3]; and (v) its proffer follows adequate notice to the adverse party. *U.S. v. Bryce*, 208 F.3d 346, 350 (2d Cir. 1999) (construing F.R.E. 807's predecessor).

Furthermore, the Court has reviewed the allegations of fraud made in the arbitration proceeding and finds that even if each of the allegations is assumed to be true, the facts would not support Plaintiffs' claim under section 523(a)(2)(A). For these reasons, the Court finds no prejudice to the Debtor in overruling his evidentiary objection to the introduction of the full arbitration record. *See Garcia v. Fawzy (In re Garcia)*, BAP No. CC-19-1214-SGF, BAP No. CC-19-1232-SGF, 2020 WL 5203201, at *8 (B.A.P. 9th Cir. Sept. 1, 2020) (citing F.R.E.103(a)).

2. **Elements of a section 523(a)(2)(A) claim**

The Court's analysis of the applicability of collateral estoppel in this case begins with a review of the statutory elements of the causes of action asserted by the Plaintiffs. The Plaintiffs seek relief under section 523(a)(2)(A), which excepts from discharge any debt ". . . to the extent obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

To establish a debt was obtained by false pretenses the movant must show: (1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly by the defendants; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money, property or credit to the defendant. *Voyatzoglou et al. v. Hambley* (*In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005). A false pretense occurs when there is "conscious deceptive or misleading conduct calculated to obtain or deprive another of property." *Gentry et al. v. Kovler (In re Kovler)*, 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000).

To establish false representation, one must show that: (1) the defendant made a false or misleading statement; (2) with intent to deceive; (3) in order for the plaintiff to turn over money or property to the defendant. *See Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R.

23, 35 (Bankr. E.D.N.Y. 2011). The elements of false pretenses are distinguishable from those of false representation. While a false representation requires a "definable statement by the debtor that results in a misrepresentation," a false pretense requires conduct by the debtor that "implies or promotes a scheme that is misleading." *Argento v. Cahill (In re Cahill)*, Case No. 15–72418, Adv. Pro. No. 15–08298, 2017 WL 713565, at *6 -7 (Bankr. E.D.N.Y. Feb. 27, 2017). This is particularly critical where the creditor establishes the debtor's conduct without a showing of explicit statements, thereby establishing fraud only under false pretense and not false representation. *See e.g.*, *In re Wisell*, 494 B.R. at 36-37 (finding that false pretense, but not false representation, was established by evidence showing a deliberate failure to disclose information).

Lastly, to establish actual fraud under section 523(a)(2)(A), one must show that: (1) the debtor made a false representation; (2) that at the time made, the debtor knew the statement was false; (3) the misrepresentation was made with an intent to deceive; (4) that the creditor reasonably relied on that misrepresentation; and (5) that the creditor was damaged as a result of the misrepresentation. *Id.* Under the Supreme Court's decision in *Husky International*, the term "actual fraud" encompasses fraudulent conveyance schemes, even when those schemes do not involve a false representation. *See Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

3. **Collateral estoppel**

The Plaintiffs assert that the Award should be given preclusive effect on the issue of non-dischargeability under section 523(a)(2)(A) pursuant to the doctrine of collateral estoppel. Plaintiffs acknowledge that the Award itself contains no specific factual findings as to the Debtor's conduct. However, Plaintiffs argue that the elements necessary for this Court to grant the requested relief under section 523(a)(2)(A) are satisfied by the nature of the claim and resulting Award. Plaintiffs rely heavily on the fact that the arbitrator trebled damages under the VCPA, which implicates willfulness, and on the presumption that a claim under the VCPA must

necessarily be premised on fraudulent conduct; therefore the trebling of damages, they argue, necessarily implies a finding of willful fraud which satisfies the elements of section 523(a)(2)(A).

Although the Court agrees that a lack of factual findings and/or reasoning to support an award does not automatically preclude the application of collateral estoppel, the Court finds that neither an analysis of the claims asserted nor the resulting Award in this case establish the factual or legal elements required to establish the elements of section 523(a)(2)(A). This Court must give full faith and credit to the finding of liability and the amount of the Award and Judgment, and the conclusion of the arbitrator that the Debtor committed acts that warranted the Award. However, the issue this Court is being asked to resolve is whether based on that Award, which contains no specific factual or legal findings, this Court must also accept the Plaintiffs' theory that the Award was premised on conduct by the Debtor that constituted, and is identical to, "false pretenses, a false representation, or actual fraud . . ." as those terms are defined under section 523(a)(2)(A).

The doctrine of issue preclusion, or collateral estoppel, "bars 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" *Guggenheim v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 799–800 (Bankr. E.D.N.Y. 2014) (quoting *NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 184 (2d Cir. 2011)). The Supreme Court found in *Grogan v. Garner* that in dischargeability actions, "a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were litigated and determined in the prior action." *Grogan v. Garner*, 498 U.S. 279, 284 (1991). Collateral estoppel may be applied to findings in arbitral awards, as they are entitled to the same

treatment as any other state court judgment. *See Munoz v. Boyard (In re Boyard)*, 538 B.R. 645, 653 (Bankr. E.D.N.Y. 2015) (citing *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015)) (confirmation of an arbitration award is "'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'"); *O'Brien v. Zangara (In re Zangara)*, 217 B.R. 26, 32–33 (Bankr. E.D.N.Y. 1998).

Because the Judgment was entered in the Supreme Court of Suffolk County, New York law applies. *See Rupert v. Krautheimer (In re Krautheimer)*, 210 B.R. 37, 50 (Bankr. S.D.N.Y. 1997) (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

Under New York law, the collateral estoppel doctrine is applied as a two-step test requiring that "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007), *cert. denied*, 129 S. Ct. 895 (2009). "[F]or a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006) (quoting *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 666–67 (1990)). Considering the difficulty in determining the identity of issues between prior judgments and subsequent dischargeability actions, "[a]ny reasonable doubt as to what was decided by a prior judgment . . . should be resolved against using it as an estoppel." *Sarasota CCM, Inc. v. Kuncman (In re Kuncman)*, 454 B.R. 276, 284 (Bankr. E.D.N.Y. 2011) (quoting *In re Cohen*, 92 B.R. 54, 70–71 (Bankr. S.D.N.Y. 1988)).

That the Debtor had a full and fair opportunity to litigate the Award is not disputed. The Debtor participated in the arbitration and was represented by counsel; thus the second prong of the collateral estoppel analysis is satisfied.

However, after thorough review of the record the Court finds that the identity requirement of the first prong is not met. In order to find for a plaintiff in a section 523(a) action, the Court must find that all the necessary elements of section 523(a) have been proven by a preponderance of evidence. *See Grogan v. Garner*, 498 U.S. 279 (1991). When a plaintiff seeks to establish its case using principles of collateral estoppel, as this Court has stated in the past, the bankruptcy court must be able to point to clear and unequivocal factual and/or legal findings in the prepetition judgment which would satisfy the requisite elements of section 523(a). *See In re Wisell*, 494 B.R at 29; *In re Kuncman*, 454 B.R. at 284.

If a prepetition judgment does not set forth clear findings that would establish the elements of section 523, the bankruptcy court "must reconstruct the prior court's decisionmaking process." 4 COLLIER ON BANKRUPTCY ¶523.06; *Fuller v. Rea (In re Rea)*, 606 B.R. 531, 539–40 (Bankr. S.D.N.Y. 2019) ("Even when courts are forced to construct the reasoning behind a prior court's decision, collateral estoppel is available if reconstruction is successful. . . ."). This process, otherwise termed by Judge Frank in *In re Kates* as the "deductive" approach,[4] entails the following:

> [T]he bankruptcy court starts with the ultimate conclusions of the first court (which usually are not in dispute) - for example, that the court entered

---

[4] An alternative process, referred to by Judge Frank as the "inductive" approach, is employed when the prior proceeding made express findings of fact and conclusions of law. Under this approach, the court evaluates "whether the preclusive facts, considered in the aggregate, establish any or all the elements of a §523(a) claim." *In re Kates*, 485 B.R. at 102.

> judgment in the creditor's favor on a particular cause of action. The court next attempts to reconstruct inferentially the necessary foundations of the prior decision. If that reconstruction process is successful, the court then compares those foundational elements of the prior court ruling to the statutory elements of the §523(a) nondischargeability asserted by the plaintiff.

*In re Kates*, 485 B.R. at 102. In addition to being a legal analysis, the deductive approach may also require a bankruptcy court to review the materials from the first proceeding, such as pleadings and briefs, to determine what issues were actually litigated. *Id*. "When reconstruction is not successful, courts are forced to reject collateral estoppel as such failure leaves no issue conclusions available for estoppel." *In re Rea*, 606 B.R. at 540.

The Award is devoid of any specific factual findings and does not reference any specific statute or legal principle upon which it is based. The Court therefore must apply the "deductive approach" by reviewing the pleadings submitted in the arbitration and comparing the Plaintiffs' allegations and the necessary elements of the VCPA claim to the elements of the section 523(a)(2)(A) claim. A purely objective legal analysis of the VCPA and section 523(a)(2)(A) leads the Court to conclude that not all claims under the VCPA satisfy the elements of section 523(a)(2)(A). While a finding of misrepresentation under the VCPA and trebled damages has been held to satisfy the requirements of section 523(a)(2)(A), *see Grey-Theriot v. Quansah (In re Quansah)*, Case No. 10-12304, Adv. Proc. No. 10-1260, 2011 WL 1363992, at *9–10 (Bankr. E.D. Va. Apr. 11, 2011), none of the arbitration materials admitted into evidence here indicate that the award of trebled damages by the arbitrator was necessarily based on a finding of false pretenses, false representation, or actual fraud under the VCPA.

The VCPA was passed as a "remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." VA. CODE ANN. §59.1-197. Plaintiffs' Pre-Hearing Brief in the arbitration cited only generally to Va. Code Ann. § 59.1-200 et seq.

Section 59.1-200 lists sixty-six separate "prohibited practices" which it defines as "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Despite the general characterization of these prohibited practices as "fraudulent," the VCPA enumerates several violations that do not require a showing of a misrepresentation, nor do they, by definition, imply fraud.[5] See, for example, the following provisions:

- VA. CODE ANN. §59.1-200(A)(13) ("Subsection 13") prohibits the enforcement of a void or unenforceable penalty clause.
- VA. CODE ANN. §59.1-200(A)(17) ("Subsection 17") prohibits the failure of a supplier to adhere to the terms and conditions of a written agreement with a consumer to resolve a dispute that arises in connection with a consumer transaction.
- VA. CODE ANN. §59.1-200(A)(33) ("Subsection 33") prohibits the violation of any provision of §59.1-441.1 et seq., which proscribes the creation of any "legal services plan" that has not properly registered with the Commissioner.

These provisions implicate contract enforceability, breach of contract, and regulatory compliance, respectively. This Court has no way of knowing which of the sixty-six subsections of VCPA §59.1-200 were being asserted in the arbitration or were relied on by the arbitrator in reaching its decision. If the arbitrator found, for example, that the Debtor failed to adhere to the terms of the Operating Agreement, the VCPA would allow the arbitrator to award damages to the Plaintiff and treble them if there was a finding that the Debtor's actions were "willful." In that case, the Award would be based entirely on willful breach of contract, which would not rise to the level of conduct proscribed by section 523(a)(2)(A).

---

[5] Even for cases under the VCPA that do involve a misrepresentation, that statute does not require a showing of common law fraud or that the consumer "prove in every case that misrepresentations were made knowingly or with the intent to deceive." *Childers v. Woodlawn Funeral & Crematory*, 99 Va. Cir. 388, 396 (2018); *see also Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497 (2014). Without the element of intent or knowledge, misrepresentation under the VCPA does not align with any of the types of fraud under 523(a)(2)(A), all of which require a showing of intent or knowledge on the part of the wrongdoer. *See supra*, part 2.

One bankruptcy court in Virginia held that a prepetition finding of a misrepresentation by the debtor under the VCPA, and a finding that such misrepresentation was willful would satisfy the elements of section 523. *See In re Quansah*, 2011 WL 1363992, at \*9–10. In *In re Quansah*, the plaintiff obtained a prepetition judgment awarding treble damages on a claim under the VCPA that alleged "misrepresenting an intent to purchase tickets and misrepresenting services to be performed." *Id.* at \*4. The plaintiff argued that this judgment should be given preclusive effect in a section 523 non-dischargeability action. *Id*. Although the bankruptcy court noted that from its review of the prior record it would have difficulty finding deliberate misrepresentation, the court ultimately held that the state court judgment was preclusive under section 523(a)(2)(A). *Id*. at \*7–8. In finding congruence between the elements of misrepresentation under the VCPA and the elements for non-dischargeability under section 523(a)(2), the court noted that "[t]o the extent the Virginia act may be violated by conduct short of a willful intent to deceive, that element is supplied in this case by the award of enhanced damages, which allows such damages only if the trier of fact determines that the violation was 'willful.'" *Id*. at \*9–10.

A thorough review of the Plaintiffs' Notice of Demand and Pre-Hearing Brief shows that the elements of misrepresentation were pled only once in the brief, in reference to the Virginia Retail Franchising Act, Va. Ann. Code § 13.1-559, which the Plaintiffs explicitly stated was not a part of their claim. In the Notice of Demand, the Plaintiffs failed to plead any elements of misrepresentation and only listed misrepresentation as one of three claims for relief. As a result, in order to give preclusive effect to the Award here the Court would need to infer that among the numerous possible violations under the VCPA the arbitrator found that the violation was a misrepresentation and that the misrepresentation was willful and satisfied all of the elements of section 523(a)(2)(A).

Unlike the case in *In re Quansah*, which dealt with a singular claim of misrepresentation under the VCPA, the Plaintiffs' arbitration claims were painted in broad brush strokes over the entirety of the VCPA. The Court does not doubt that the arbitrator had good reason to impose treble damages based on a "willful" violation of the VCPA, but this Court cannot determine whether the Debtor's "willfulness" related to a false representation by the Debtor, false pretenses, actual fraud, or just was related to a willful breach of the Operating Agreement. As a result, the Court cannot find that the liability determined by the Award involved findings that were identical to the elements of section 523(a)(2)(A).

For these reasons, the Court finds that it is not bound to accept the Award as preclusive on the issues asserted in this adversary proceeding, and the Debtor is not precluded from litigating the elements of false pretenses, false representation or actual fraud under section 523(a)(2).[6] As such, the Plaintiffs must establish that the Debtor's conduct satisfies the elements of section 523(a)(2)(A) by a preponderance of evidence.

4. **Merits of the section 523(a)(2)(A) claim**

In this case, the complaint fails to differentiate among the different causes of action under section 523(a)(2)(A) and fails to allege facts which would support a finding of false pretenses, false representation or actual fraud. The allegations of the complaint rely entirely on the collateral estoppel effect of the Award which the Court has already found does not conclusively establish any of the elements of section 523(a)(2)(A).

Analysis of the entire record before the Court leads this Court to conclude that, even if we assume all of the allegations made in the complaint and in the arbitration to be true, the

---

[6] This finding was implicit in this Court's denial of the Plaintiffs' motion for summary judgment which was premised on collateral estoppel. The reasoning contained in this Decision serves to make the Court's findings on collateral estoppel explicit.

Plaintiffs still fail to establish a claim under any provision of section 523(a)(2)(A). As stated earlier in this Decision, the Plaintiffs asserted four claims sounding in breach of contract alleging multiple violations of the Operating Agreement by: violating "exclusive region" and non-compete clauses of the Operating Agreement; failing to provide the "Hungry Boater" app; and infringing on Plaintiffs' editorial rights. A debtor's breach of contract, without more, does not satisfy the elements of section 523(a)(2)(A). *See, e.g.*, *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 621 (Bankr. N.D.N.Y. 2010) ("[D]ebts and liabilities based solely upon a breach of contract are not excepted from discharge under this section."). Plaintiffs also assert one claim for "fraud and deception" resulting from Debtor's alleged violation of the Virginia Retail Franchising Act, Va. Ann. Code §13.1-559, based on the Debtor's representation that their business was a partnership when in fact it was a franchise, and the Debtor's failure to provide a disclosure statement as mandated by the Virginia Code. Despite the Plaintiffs' use of the words "fraud and deception" in connection with the allegation that Debtor violated the Retail Franchising Act, this Court cannot find that the elements of section 523(a)(2)(A) are satisfied by the alleged misrepresentation.

## CONCLUSION

Based on the record of this proceeding, the Court finds that the Plaintiffs have not established by a preponderance of the evidence that their claim should be excepted from discharge pursuant to section 523(a)(2)(A) of the Bankruptcy Code. The Debtor is directed to submit a proposed judgment consistent with this Decision within seven days of entry of this Decision.



Dated: Central Islip, New York  
June 3, 2021

Robert E. Grossman  
United States Bankruptcy Judge